**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Dees, | No. CV-19-05895-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| US Collections West Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiff, David Dees, Motion for Attorney's Fees, (Doc. 20), and responsive pleadings. (Docs. 21-22.) Pursuant to LRCiv. 7.2(f) the Court elects to rule on this matter without oral argument. The Court grants Plaintiff's request for attorneys' fees in the amount of $4,847.50, finding the remaining portion of the hours claimed were not "reasonably expended" on the litigation.

**I.  Background**

On December 26, 2019, Plaintiff, David Dees ("Dees"), filed this action against Defendant, U.S. Collections West, Inc. (West), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. On March 23, 2020, in response to the parties' mutual stipulation, the Court entered an order granting Plaintiff statutory damages of $1,000.00 and costs of $450.00 and ordering the parties to submit briefing on the issue of attorneys' fees. (Doc. 19.) Plaintiff submitted this Motion for Attorney's Fees on March 30, 2020 claiming fees in the amount of $7,243.50 for the time spent resolving the underlying case. (Doc. 20.) Plaintiff also asserted his right to an

additional $2,205.00 in fees for time spent preparing his original motion for fees and his reply to Defendant's response to that motion. (Doc. 20 at 5; Doc. 22 at 10.) Defendant has responded arguing the number of hours spent by Plaintiff in litigating the case were unreasonable because Plaintiff rejected settlement offers that matched the maximum amount of his statutory damages and continued to push for more damages and other remedies not provided under FDCPA. (Doc. 21.)

While this case was filed on December 26, 2019, the parties' settlement discussions predate the formal filing by several months, a fact the Plaintiff's request for fees rightly reflects. (Doc. 20.) On August 27, 2019 Plaintiff's counsel sent a draft complaint and notice letter to the Defendant. (Doc. 20-2 at 6.) Shortly after receiving the documents, Defendant's president, Donald Darnell (Mr. Darnell) attempted to contact Plaintiff's counsel and seek a quick resolution "as Defendant was not disputing liability." (Doc. 21 at 2.) Plaintiff responded with an offer to settle the case for $5,250.00 if defendant agreed to remove the trade lines it had reported on Plaintiff's credit score. (Doc. 22 at 2.) On September 4, 2019, Defendant responded with a settlement offer of $1,000 matching Plaintiff's maximum statutory damages. (*Id*.) Plaintiff responded the next day with an offer to settle the case for $4,750.00 plus tradeline deletion. (*Id*.) Defendant responded requesting a calculation for the basis of the demand and notified Plaintiff's counsel that Plaintiff currently had a remaining outstanding debt to the Defendant of more than $5,000.00. (Doc. 22-4 at 3.) Defendant then informed the Plaintiff's counsel it would offer to settle for $2,000.00 without any trade deletion and informed him if the offer wasn't accepted then Plaintiff could file suit and they would offer a settlement of the judgement $3,500.00 and sue Plaintiff separately to recover his outstanding debt. (22-5 at 2.)

Additional settlement communications were exchanged between the parties, but they remained at an impasse. This was due to Defendant's refusal "remove [the trade line] from his credit report unless there is a legal reason why[1]," (Doc. 22-10 at 2), combined

---

[1] Plaintiff has since admitted that requiring trade line deletion is not a remedy available under the FDCPA. (Doc. 22 at 2.) However, Plaintiff asserts it is a "common feature in FDCPA settlements.

with Plaintiff's minimum offer of $4,250.00 to settle the case. As noted above, the Plaintiff eventually filed suit on December 26, 2019. (Doc. 1.) Defendant filed an answer with the Court on February 12, 2020. (Doc. 12.) On that same day, Defendant sent Plaintiff's counsel a copy of an answer *admitting its liability* and an offer of judgement for $3,500.00. (Doc. 21 at 3.) However, Plaintiff refused this offer and on March 5, 2020 filed a motion for Judgement on the Pleadings. (Doc. 13.) Several days later, on March 10, Plaintiff informed the Defendant that his new settlement demand was $7,500.00 plus deletion of the alleged debt from the Plaintiff's credit report. (Doc. 21 at 3.) Throughout these settlement negotiations, Defendant at various times requested Plaintiff to explain the basis by which he calculated the settlement value of the case. (Docs. 22-3-22-8.) It does not appear in any of the documents attached by the Plaintiff or the Defendant that Plaintiff's counsel gave any explanation of the calculation other than asserting it was the limits of their authority.

Shortly after Plaintiff's counsel filed his motion for judgment on the pleadings, the parties agreed to stipulate to Defendant's liability for statutory damages and costs. (Doc. 21 at 4.) Plaintiff's counsel conceded that Plaintiff has suffered no actual damages, and counsel agreed to engage in further talks in an attempt to settle the amount of attorney's fee's owed. (*Id.*) After those talks remained unfruitful, Plaintiff filed this motion with the Court seeking his attorney's fees under the statute.

## II.     Rule of Law

"[I]n the case of any successful action to enforce [liability under the FDCPA]," a debtor is entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 949 (9th Cir. 2007). The award of fees in the case of a successful action under the FDCPA is mandatory. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012) (citing *Bridgeport v. Camacho*, 523 F.3d 973, 978 (9th Cir. 2008)). "The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Id.*

A district court must calculate awards for attorneys' fees using the "lodestar"

method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *Defenbaugh v. JBC & Assocs. PC*, No. 04-16866, 2006 U.S. App. LEXIS 19930 (9th Cir. Aug. 3, 2006). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party *reasonably expended* on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (emphasis added). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland*, 244 F.3d at 1149 n.4. Thus, the district court may adjust the "lodestar" figure upward or downward taking into consideration twelve "reasonableness" factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Evon*, 688 F.3d at 1033 (quoting *Morales*, 96 F.3d at 363 n.8). Because the lodestar amount is presumptively reasonable, an adjustment of the amount upward or downward should only occur in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings'…that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum v. Stenson,*

465 U.S. 886 (1984)); *Blum*, 465 U.S. at 897; *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384, 1386 (9th Cir. 1990); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989)).

**III.   Analysis**

Plaintiff argues that he is entitled to fees in excess of $7,000.00 for his efforts pursuing this case. However, Defendant argues, and this Court agrees, that a portion of these fees were only accrued due to Plaintiff's continued push for more than his statutory damages and pursuit of remedies not provided under the FDCPA. Throughout settlement negotiations Plaintiff continually insisted upon Defendant's removal of the trade line memorializing his debt despite the fact that no such remedy is available under the statute. In addition, Plaintiff consistently insisted upon settlement amounts well in excess of the total value of the case despite his clear lack of any non-statutory damages. When Defendant sought clarification of the basis of these settlement amounts, Plaintiff continuously refused to extrapolate with any explanation other than listing it as the lower limit of his settlement authority.

Additionally, as of February 12, 2020, the Defendant offered Plaintiff a judgment (Doc. 22 at 5), along with $3500.00. That offer essentially gave Plaintiff a formal judgement and an amount that nearly represented his maximum statutory damages with all his fees and costs. (Doc. 21 at 3; Doc. 20-2 at 4-7.) Instead of communicating with Defendant regarding the $146.50 discrepancy between Defendant's offer and Plaintiff's maximum recovery, Plaintiff elected to continue to litigate the case, spending approximately six hours and billing more than $2,300.00 drafting a motion for partial judgment on the pleadings. Plaintiff's motion largely sought the Court's decision of issues to which the Defendant had already offered to stipulate. (Docs. 13; 20-2.) Plaintiff then informed the Defendant his new minimum offer to settle was $7,500.00 plus deletion of the trade line. (Doc. 21-3.)

If the Plaintiff had confined his cause of action to the remedies actually available to him, rather than asking for damages he did not have, the case would have settled much

earlier. The Court declines to force the Defendant to shoulder the costs of the Plaintiff's unreasonable actions. As such, the Court finds that Plaintiff's fees that accrued after February 12, 2020 were not "reasonably expended" on the litigation.[2]

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff is granted his attorney fees in the in the amount of $4,847.50.

Dated this 29th day of December, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge

---

[2] Defendant having not objected, the Court also grants Plaintiff his attorney's fees accrued by the submitting of this motion in the amount of $2,205.00